1

2

3

4                    UNITED STATES DISTRICT COURT

5                    EASTERN DISTRICT OF CALIFORNIA

6

7    WILMA SHORE,                      1:07-CV-01160 OWW SMS

8             Plaintiff,
                                       MEMORANDUM DECISION RE
9                                      DEFENDANT UNITED STATES OF
                                       AMERICA'S MOTION FOR SUMMARY
10        v.                           JUDGMENT AGAINST ADDITIONAL
                                       COUNTERCLAIM DEFENDANTS
11   KEVIN M. BROWN, ACTING            GREGORY SHORE AND BRENDA
     COMMISSIONER OF INTERNAL          REYNOLDS (Doc. 52.)
12   REVENUE SERVICE OF UNITED
     STATES OF AMERICA, and DOES 1
13   through 10 inclusive

14

15            Defendant.

16   UNITED STATES OF AMERICA,

17            Counterclaimant,

18        v.

19   WILMA SHORE,

20        Counterclaim Defendant.

21   AND

22   GREGORY SHORE and BRENDA O.
     REYNOLDS
23
          Additional Counterclaim
24      Defendants.

25

26   ///

27   ///

28   ///

                              1

1

## I.  **INTRODUCTION**.

2    Before the court for decision is the United States' Motion For

3  Summary Judgment to reduce to judgment the outstanding federal

4  income tax liabilities assessed against Counterclaim-Defendants

5  Gregory Shore and Brenda Reynolds.  (Doc. 52.)   The motion is

6  unopposed.[1]

7

## II.  **FACTUAL BACKGROUND**.

8

9    This case arises out of tax liabilities assessed by the

10  Internal Revenue Service ("IRS") against Gregory Shore and Brenda

11  Reynolds because it deemed them to be responsible persons for three

12  separate corporations, Dean's Materials, Inc., Dean R. Shore, Inc.,

13  and Cybergate, Inc.  The government seeks to collect unpaid payroll

14  taxes from Dean's Materials, Inc. and Dean R. Shore, Inc., for

15  eleven tax periods from April 1, 1997 through December 31, 1999.

16  The government seeks recovery of payroll taxes from Cybergate.com,

17  Inc., for seven tax periods from March 31, 1998 through September

18  30, 1999.

19    CMS and INCON evolved out of a small acoustical tile business

20  started by Dean R. Shore, Gregory Shore's deceased father, in 1960.

21  (Defendant United States' Statement of Disputed Facts ("DSUF") 1.)

22  Dean's Materials, Inc. sold building supplies in Central California

23  under the trade name Construction Materials Suppliers ("CMS").

24  (DSUF 3.)   Dean R. Shore, Inc. was a large commercial acoustical

25

26    [1] The United States requested the Clerk to enter default
    against Gregory Shore and Brenda Reynolds on June 23, 2008.  (Docs.
27  20 & 21.)  The Clerk entered default against both parties on June
    24, 2008.  (Docs. 24 & 25.)  To date, neither Gregory Shore nor
28  Brenda Reynolds have moved to set aside the default.

**2**

tile, plaster and commercial drywall subcontractor that did
business under the name Interior Contractors ("INCON"). (DSUF 4.)
Throughout the relevant tax periods at issue in this case, CMS was
the parent company and sole shareholder of INCON.[2] (DSUF 7.)

During the relevant tax periods at issue in this litigation,
Gregory Shore and Brenda Reynolds were employees of CMS and INCON.
(DSUF 14, 56.)  Gregory shore managed the daily operations of CMS
and INCON, as well as serving as a director and officer for each
company.  (DSUF 9, 14, 56, 69, 72-74.)  Brenda Reynolds was the
controller for both companies, managing financial operations and
the accounts payable.  (DSUF 56-58.)  It is undisputed that both
Shore and Reynolds signed checks, controlled employees (i.e.,
ability to hire and fire), knew of CMS and INCON's poor financial
condition as early as 1997, and paid other creditors with full
knowledge of the federal tax indebtedness.[3]  (DSUF 14, 56-82.)  It
was on this basis that the IRS assessed penalties against Gregory
Shore and Brenda Reynolds.  (DSUF 117-19.)

Gregory Shore acquired Cybergate in the mid-1990's and, during
the relevant tax periods, was its majority owner, President, and

---

[2] Other than the interests of Gregory Shore and Brenda
Reynolds, Cybergate was not directly affiliated to either CMS or
INCON.

[3] There is also evidence that Mrs. Reynolds deposited $30,000
of her personal funds into INCON's payroll accounts to cover
payroll checks.  (DSUF 68.)  In her January 22, 2009 deposition,
Mrs. Reynolds admitted making the deposits because "[a]ll I know is
one day I went to the bank and there was like 18 guys waiting for
their paychecks, and there was no money in the payroll account."
(Dep. Reynolds, 70:21-70:24.)  According to Mrs. Reynolds, Mr.
Shore knew that she deposited personal funds into company accounts
(Dep. Reynolds, 71:4-71:6.)

Director.  (DSUF 74.)  Mrs. Reynolds was Cybergate's Secretary and Treasurer, as well as serving on its Board of Directors.  (DSUF 69.)  Pursuant to their corporate positions, Shore and Reynolds had significant control over Cybergate's financial operations, including signing checks, hiring and firing employees, and negotiating contracts.  (DSUF 69-71, 75.)  It is undisputed that Shore and Reynolds knew Cybergate was in poor financial condition as early as 1997, yet continued paying creditors other than the IRS during the relevant time period in this case.  (Id.)

Following an investigation into the delinquent taxes, the IRS assessed trust fund recovery penalties against Gregory Shore and Brenda Reynolds relating to CMS, INCON, and Cybergate's outstanding payroll liabilities.  (DSUF 117-19.)

A.   *Assessments Against Gregory Shore*

The IRS assessed penalties against Gregory Shore as to CMS and INCON's unpaid tax liabilities for eleven tax periods from April 1, 1997 through December 31, 1999.  (DSUF 117-18.)  The IRS assessed penalties against Gregory Shore as to Cybergate.com's unpaid tax liabilities for seven tax periods from March 31, 1998 through September 30, 1999.  (Id.)

The IRS assessed penalties against Gregory Shore concerning CMS' unpaid tax liabilities in the amount of $38,867.58 for the second quarter of 1997, $36,346.66 for the third quarter of 1997, $39,647.46 for the fourth quarter of 1997, $25,287.07 for the first quarter of 1998, $25,665.25 for the second quarter of 1998, $26,193.58 for the third quarter of 1998, $23,540.84 for the fourth quarter of 1998, $17,642.23 for the first quarter of 1999,

**4**

$18,670.89 for the second quarter of 1999, $18,519.88 for the third quarter of 1999, and $19,336.95 for the fourth quarter of 1999.[4] (DSUF 118.)

Concerning INCON, the IRS assessed penalties against Gregory Shore in the amount of $106,345.58 for the second quarter of 1997, $155,671.18 for the third quarter of 1997, $124,821.18 for the fourth quarter of 1997, $218,437.67 for the first quarter of 1998, $144,667.76 for the second quarter of 1998, $91,513.87 for the third quarter of 1998, $183,554.25 for the fourth quarter of 1998, $171,853.43 for the first quarter of 1999, $217,007.41 for the second quarter of 1999, $143,344.31 for the third quarter of 1999, and $122,304.55 for the fourth quarter of 1999.  (DSUF 118.)

The IRS assessed trust fund recovery penalties against Gregory Shore relating to Cybergate's outstanding payroll liabilities for seven tax periods running from April 1, 1997 through December 31, 1999.  (DSUF 118.)  The IRS assessed penalties against Mr. Shore in the amount of $4,861.38 for the first quarter of 1998, $5,178.26 for the second quarter of 1998, $4,619.19 for the third quarter of 1998, $4,523.20 for the fourth quarter of 1998, $4,625.13 for the first quarter of 1998, $5,723.50 for the second quarter of 1998, and $5,836.08 for the third quarter of 1998.  (DSUF 118.)

As of July 19, 2009, the total assessed penalties against Brenda Reynolds for CMS, INCON, and Cybergate's federal tax liabilities for all tax periods at issue, including interest, is

---

[4] The assessed penalties against Mrs. Reynolds concerning CMS and INCON span only eight tax periods, from March 31, 1998 through December 31, 1999.  The assessed penalties against Gregory Shore concerning CMS and INCON for eleven tax periods from April 1, 1997 through December 31, 1999.

1    $3,160,230.95.  (DSUF 118.)

2

3         B.   Assessments Against Brenda Reynolds

4         The IRS assessed penalties against Brenda Reynolds as to CMS

5    and INCON's unpaid tax liabilities for eight tax periods, from

6    March 31, 1998 through December 31, 1999.  (DSUF 119.)  The IRS

7    assessed penalties against Brenda Reynolds as to Cybergate.com's

8    unpaid tax liabilities for seven tax periods from March 31, 1998

9    through September 30, 1999.  (Id.)

10        The IRS assessed penalties against Brenda Reynolds concerning

11   CMS' unpaid tax liabilities in the amount of $25,287.07 for the

12   first quarter of 1998, $25,665.25 for the second quarter of 1998,

13   $26,193.58 for the third quarter of 1998, $23,540.84 for the fourth

14   quarter of 1998, $17,642.23 for the first quarter of 1999,

15   $18,670.89 for the second quarter of 1999, $18,519.88 for the third

16   quarter of 1999, and $19,336.95 for the fourth quarter of 1999.[5]

17   (DSUF 119.)

18        Concerning INCON, the IRS assessed penalties against Brenda

19   Reynolds in the amount of $218,437.67 for the first quarter of

20   1998, $144,667.76 for the second quarter of 1998, $91,513.87 for

21   the third quarter of 1998, $183,554.25 for the fourth quarter of

22   1998, $171,853.43 for the first quarter of 1999, $217,007.41 for

23   the second quarter of 1999, $143,344.31 for the third quarter of

24   1999, and $122,304.55 for the fourth quarter of 1999.  (DSUF 119.)

25

26        [5] The assessed penalties against Mrs. Reynolds concerning CMS
     and INCON span only eight tax periods, from March 31, 1998 through
27   December 31, 1999.  The assessed penalties against Gregory Shore
     concerning CMS and INCON for eleven tax periods from April 1, 1997
28   through December 31, 1999.

**6**

The IRS assessed trust fund recovery penalties against Brenda Reynolds relating to Cybergate's outstanding payroll liabilities for seven tax periods running from April 1, 1997 through December 31, 1999.  The IRS assessed penalties against Mr. Shore in the amount of $4,861.38 for the first quarter of 1998, $5,178.26 for the second quarter of 1998, $4,619.19 for the third quarter of 1998, $4,523.20 for the fourth quarter of 1998, $4,625.13 for the first quarter of 1998, $5,723.50 for the second quarter of 1998, and $5,836.08 for the third quarter of 1998.  (DSUF 119.)

As of July 19, 2009, the total assessed penalties against Brenda Reynolds for CMS, INCON, and Cybergate's federal tax liabilities for all tax periods at issue, including interest, is 2,290,843.92.  (DSUF 119.)

### III.  **PROCEDURAL BACKGROUND**.

On August 8, 2008, Mrs. Wilma Shore, Gregory Shore's mother and an officer, director, and majority shareholder of CMS and INCON, brought suit against the United States pursuant to 28 U.S.C. § 1346, seeking a refund of trust fund liabilities assessed personally against her by the IRS.

On December 17, 2007, the United States filed its Answer to Shore's Complaint and asserted a counterclaim against Plaintiff Wilma Shore seeking to collect the balance of the assessed penalties. (Doc. 8.)  The United States also raised counterclaims against Gregory Shore and Brenda Reynolds, seeking to reduce to judgment certain trust fund recovery penalties assessed against them pursuant to 26 U.S.C. § 6672.

On June 23, 2008, the United States requested the Clerk of

**7**

1   Court to enter default against Gregory Shore and Brenda Reynolds.

2   (Docs. 20 & 21.)  The Clerk entered default against both parties on

3   June 24, 2008.  (Docs. 24 & 25.)

4        On July 20, 2009, the United States filed a Motion For Summary

5   Judgment to reduce to judgment the outstanding federal income tax

6   liabilities assessed against Plaintiff and Counterclaim-Defendant

7   Wilma Shore and Additional Counterclaim-Defendants Gregory Shore

8   and Brenda Reynolds.  (Doc. 52.)  As to Counterclaim-Defendants

9   Gregory Shore and Brenda Reynolds, the United States seeks to

10  reduce trust fund penalties to judgment because they are

11  responsible persons under 26 U.S.C. § 6672 for the unpaid tax

12  liabilities of Dean's Materials, Inc. and Dean R. Shore, Inc., and

13  Cybergate, Inc.

14       To date, neither Gregory Shore nor Brenda Reynolds have moved

15  to set aside the default or opposed the government's summary

16  judgment motion.

17

18                    IV. **LEGAL STANDARD**.

19       Summary judgment is appropriate when "the pleadings, the

20  discovery and disclosure materials on file, and any affidavits show

21  that there is no genuine issue as to any material fact and that the

22  movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

23  56(c).  The movant "always bears the initial responsibility of

24  informing the district court of the basis for its motion, and

25  identifying those portions of the pleadings, depositions, answers

26  to interrogatories, and admissions on file, together with the

27  affidavits, if any, which it believes demonstrate the absence of a

28  genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

**8**

317, 323 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in his favor." *Id*. (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

**9**

in his favor." *Id*. at 255.

## V. <u>DISCUSSION</u>.

A. <u>Trust Fund Recovery Penalties Under 26 U.S.C. § 6672</u>

The Internal Revenue Code requires employers to withhold federal social security and individual income taxes from the wages of their employees. *See* 26 U.S.C. §§ 3102(a), 3402(a). Although an employer collects this money each salary period, payment to the federal government takes place on a quarterly basis. In the interim, the employer holds the collected taxes in "a special fund in trust for the United States." 26 U.S.C. § 7501(a). These taxes are known as "trust fund taxes." *Slodov v. United States*, 436 U.S. 238, 243 (1978).

If an employer fails to pay over collected trust fund taxes, "the officers or employees of the employer responsible for effectuating the collection and payment of trust fund taxes who willfully fail to do so are made personally liable to a 'penalty' equal to the amount of the delinquent taxes" under 26 U.S.C. § 6672. *Slodov*, 436 U.S. at 244-45. Section 6672 provides, in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax ... not collected, or not accounted for and paid over.

26 U.S.C. § 6672.

For the purposes of Section 6672, a "person" includes "an

**10**

officer or employee of a corporation ... who ... is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).  Thus, an individual is liable for a penalty under Section 6672 if (1) he is a "responsible person"; and (2) if he acts willfully in failing to collect or pay over the withheld taxes. *Davis v. United States*, 961 F.2d 867, 869-70 (9th Cir. 1992).

    1. <u>Gregory Shore</u>

        a.  *Responsible Person*

For purposes of assessing a § 6672 penalty, a "responsible party" is one who has the "final word as to what bills should or should not be paid, and when." *Alsheskie v. United States*, 31 F.3d 837, 838 (9th Cir. 1994).  A person is deemed to have the final word when he possessed "the authority required to exercise significant control over the corporation's financial affairs, regardless of whether he exercised such control in fact." *Purcell v. United States*, 1 F.3d 932, 937 (9th Cir. 1993).  More than one person can be found responsible with respect to any tax quarter at issue, and liability can be imposed on each. *See, e.g., Turner v. United States*, 423 F.2d 448, 449 (9th Cir. 1970).  Responsibility turns on the "scope and nature of an individual's power to determine how the corporation conducts its financial affairs; the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so." *United States v. Jones*, 33 F.3d 1137, 1139 (9th Cir. 1994) (citation omitted).

Mr. Shore admitted during his January 2009 deposition that he was "responsible" for CMS, INCON, and Cybergate's tax liabilities

**11**

for the relevant periods at issue.  (DSUF 72-82.)  Despite this admission and the unopposed status of the government's motion, Mr. Shore's liability under 26 U.S.C. 6672 is evaluated under the factors set forth in *Hochstein v. United States*, 900 F.2d 543, 547 (2nd Cir. 1990).  These factors include "the individual's duties as outlined in the corporate bylaws, his ability to sign checks, his status as an officer or director, and whether he could hire and fire employees."  *Id*. at 547; *See Jones*, 33 F.3d at 1140 (approving use of the Hochstein factors).

There is substantial record evidence that Mr. Shore "exercise[d] significant control over the corporation's financial affairs," making him a responsible person under 26 U.S.C. 6672.  The United States has submitted evidence that Shore was an officer and director of the corporations, ran the daily operations, had check signing authority, and both hired and fired employees.  (DSUF 72-82.)  All of this evidence indicates that Mr. Shore had significant control over the finances of CMS, INCON, and Cybergate.com.

Mr. Shore conceded during his April 27, 1998 "IRS Form 4180" interview, that he was "running all operations" at both CMS and INCON.  (DSUF 76.)  Shore admitted that he hired and fired employees, managed employees, paid bills, and negotiated contracts.  (Doc. 59, Exh. 45.)  During his January 2009 deposition, Mr. Shore confirmed his April 27, 1998 statements and reiterated his substantial control over CMS and INCON's finances from 1997-1999.  (G. Shore Dep. 200:15-201:7.)

The undisputed facts are that Plaintiff was vice-president, secretary, and treasurer of CMS and INCON, actively managed both

**12**

corporations, had check signing authority, hired and fired
employees, and on at least one occasion attempted to negotiate a
settlement with the IRS concerning outstanding tax liabilities.
(DSUF 72-82, 122.)  Plaintiff had equal powers at Cybergate, in
addition to his majority ownership.  (DSUF 74-75.)  These facts
indicate that Plaintiff had significant control of all three
corporation's finances.

As a matter of law, Mr. Shore is a "responsible person" under
26 U.S.C. 6672.  The undisputed facts establish Mr. Shore's
"responsibility" under the Hochstein factors.

            b.  *Willfulness*

Having determined that Mr. Shore is a "responsible person" for
the relevant tax assessment periods, the remaining question is
whether Mr. Shore willfully refused to pay CMS, INCON, and
Cybergate's taxes for those periods.  In this context willfulness
is "a voluntary, conscious and intentional act to prefer other
creditors over the United States."  *Davis v. U.S.*, 961 F.2d 867,
871 (9th Cir. 1992); *Klotz v. United States*, 602 F.2d 920, 923 (9th
Cir. 1979).  Willfulness does not require an intent to defraud the
government or any other bad motive.  *Davis*, 961 F.2d at 871;
*Klotz*, 602 F.2d at 923.  Conduct motivated by a reasonable cause,
such as a desire to meet payroll, may nonetheless be willful.  *See,
e.g., Phillips v. United States*, 73 F.3d 939, 942 (9th Cir. 1996).
The standard is further explicated as follows:

> If a responsible person knows that withholding taxes are
> delinquent, and uses corporate funds to pay other
> expenses, even to meet the payroll out of personal funds
> he lends the corporation, our precedents require that the
> failure to pay withholding taxes be deemed "willful."

**13**

*Id.* (citations omitted).

Once a responsible person gains knowledge of a payroll tax deficiency, he is liable for all periods during which he was a responsible party, regardless of whether those periods precede or follow the date he gained that knowledge. *See, e.g., Davis*, 961, F.2d at 873.

Mr. Shore acknowledges that he was aware of financial problems at CMS and INCON as early as 1996. (DSUF 77.)  During his January 26, 2009 deposition, Mr. Shore testified that he knew about CMS and INCON's perilous financial condition and, specifically, the outstanding federal tax liabilities. (DSUF 77, 80.)  Nevertheless, Mr. Shore manipulated CMS and INCON's accounts so that CMS and INCON appeared solvent. (DSUF 80.)  This included paying creditors other than the IRS as early as 1997:

> Q. Basically by the beginning of calendar year 1997, you were aware that payroll taxes were delinquent to the federal government, is that correct?
>
> A. Yeah.  Actually before that, but yeah.
>
> Q. Okay ... at the time when there were outstanding delinquent payroll taxes, were you authorizing obligations other than payroll taxes to be paid out of corporate funds?
>
> A. Yes.
>
> Q. And what were you authorizing to be paid?
>
> A. Uh ... the payroll ... loan payment, suppliers, vendors, utility bills.
>
> Q. In fact, as needed if money was in CMS, and you needed it to cover something else, you just transferred it, notwithstanding the delinquent payroll taxes, is that correct?
>
> A. Correct.  Directed it to wherever I felt it was appropriate for it to go, yes.

1    Q. So I mean you take responsibility for paying
2    vendors when payroll taxes were overdue, is that
     correct?

3    A. Yes.

4    Q. And that would go for all of the tax quarters at
     issue in this case?
5

6    A. Yes.  Every single one.

7    (Exh. 3, 198:17-199:18.)

8         The evidence supporting § 6672 liability against Mr. Shore is

9    substantial and undisputed.  Mr. Shore acknowledges becoming aware

10   of the tax deficiencies of CMS and INCON in early 1997 and of

11   Cybergate in 1998.  Once Mr. Shore became aware of the deficiency,

12   he failed to ensure payment in full of that deficiency before any

13   other creditors were paid.  Instead, Mr. Shore continued writing

14   checks to trade creditors and meeting payroll obligations.  The law

15   is clear that such a failure is willful and subjects the

16   responsible person to § 6672 penalties.  *See Buffalow v. United*

17   *States*, 109 F.3d 570, 573 (9th Cir. 1997) ("If a responsible person

18   knows that withholding taxes are delinquent, and uses corporate

19   funds to pay other expenses ... our precedents require that the

20   failure to pay withholding taxes be deemed willful.")

21        After viewing the entirety of the evidence in Mr. Shore's

22   favor, drawing all inferences in his favor, there is insufficient

23   evidence to create a genuine issue of material fact concerning Mr.

24   Gregory Shore's liability under 26 U.S.C. § 6672.

25        Summary judgment is GRANTED in favor of the United States.

26

27   ///

28   ///

**15**

1      2. <u>Brenda Reynolds</u>

2           a.   *Responsible Person*

3      As an employee of CMS and INCON, and not an officer or

4 director, it would appear that the analysis of Mrs. Reynolds'

5 "responsibility" under 26 U.S.C. differs substantially from that of

6 Gregory Shore.   However, the Ninth Circuit has consistently held

7 that the control necessary to support liability under section 6672

8 is simply the ability to direct or control the payment of corporate

9 funds.   *Purcell*, 1 F.3d at 936 (quoting *Wilson v. United States*,

10 250 F.2d 312, 316 (9th Cir. 1958)).   A person is "responsible" if

11 he or she has a significant voice in determining what bills should

12 be paid or not paid, and when.   *Turner*, 423 F.2d at 449.

13      The evidence is undisputed that in September 1996, Reynolds

14 was hired as the controller of CMS and INCON.   (DSUF 56.)

15 Reynolds' first assignment as controller was to review CMS and

16 INCON's liabilities, prioritize the amounts due, and negotiate

17 payment plans with creditors.   (Id.)   Specifically, Reynolds would

18 formulate a plan for payments, discuss the plan with Greg Shore,

19 and then manipulate the timing of these payments to avoid penalties

20 and the appearance of inability to pay.   (DSUF 58.)   Reynolds often

21 "held" checks to various creditors because CMS did not have

22 sufficient funds to cover the checks.   (DSUF 57.)

23      From 1997 forward, Reynolds exercised significant authority

24 over corporate finances and accounts payable operations at CMS and

25 INCON.   By early 1997, all of the bookkeepers at CMS and INCON

26 reported to Reynolds concerning accounting matters.   (DSUF 59.)   In

27 the third and fourth quarters of 1997, as well as in 1998 and 1999,

28 Reynolds signed hundreds of checks on behalf of CMS and INCON and,

**16**

along with Greg Shore, decided what creditors to pay first. (DSUF 60 & 66.)

Signing as Controller for CMS and INCON, Reynolds reviewed and signed "Employer's Quarterly Federal Tax Returns" for eleven quarters: the quarter ending June 30, 1997 through the quarter ending December 31, 1999. (DSUF 62.) It is undisputed that no payments were made by INCON or CMS against employment tax liabilities during this period.[6] (Id.) Reynolds, as Controller for CMS and INCON, also signed "representative" letters to the CMS and INCON's accountant, Hills Renaut, in order to obtain financial statements for 1997 and 1998. (DSUF 67.) In these letters, Reynolds represented that there were no "irregularities" or "violations of law" concerning the accounting practices of CMS and INCON. (Doc. 59, Exh. 26.)

The facts in this case show that Brenda Reynolds had a status and position at CMS, INCON, and Cybergate to impose on her a legal duty to collect, truthfully account for and pay over to the IRS payroll taxes withheld from the salaries and wages of the company's employees. The law is clear that such a status and position establish that the individual is a "responsible party" under § 6672. *See Davis*, 961 F.2d at 877 (holding that a responsible person is anyone who had the authority to direct payment, regardless of his or her lack of knowledge); *United States v.*

---

[6] Two partial payments were made during the first four months of 1998. These payments were credited to the first and second quarters of 1997. INCON also wrote four $25,000 checks each intended to be partial payments for INCON's tax liability for the second quarter of 1997. All four checks bounced in January 1998. (DSUF 62.)

*Chapman*, 7 F. App'x 804, 807 (9th Cir. 2001) ([an individual] may be held responsible as long as he had the ability to exercise significant, not total, control over the company's financial affairs.).

As a matter of law, Mrs. Reynolds is a "responsible person" under 26 U.S.C. 6672.

### b.   *Willfulness*

The Ninth Circuit defines "willfulness" as a "voluntary, conscious, and intentional act to prefer other creditors over the United States." *Purcell*, 1 F.3d at 938 (quoting *Davis*, 961 F.2d at 871); *see also Teel v. United States*, 529 F.2d 903, 905 (9th Cir. 1976). "An intent to defraud the government or other bad motive need not be proven." *Davis*, 961 F.2d at 871; *Klotz v. United States*, 602 F.2d 920, 923 (9th Cir. 1979). A "responsible person" is considered to have acted willfully if he or she acted with a reckless disregard of a known or obvious risk that withholding taxes may not be remitted to the government. *Teel*, 529 F.2d 903; *Kappas v. United States*, 578 F.Supp. 1435, 1440 (C.D.Cal. 1983). Willfulness can be proven by showing a preference of other creditors over the United States either before or after the due date for the corporation to remit the withheld taxes. *Kappas v. United States* at 1440.

It is undisputed that Mrs. Reynolds had knowledge of CMS, INCON, and Cybergate's unpaid taxes. (Reynolds Dep. 82:1-107:187.) Relevant to the "willfulness analysis," is that although Mrs. Reynolds knew in 1997 that CMS, INCON, and Cybergate, in 1998, were not paying federal payroll taxes, she continued to write checks to

**18**

vendors and to employees for net wages.  (DSUF 61 & 66.)  Mrs. Reynolds continued this practice in 1998 and 1999.  (Id.)  Still facing federal tax delinquencies, Reynolds continued writing checks to creditors other than the IRS through the end of 1999:

> Q:   Now did there come a time, though, that when you were holding checks that had been cut to the IRS?
>
> A.   Yes.
>
> Q.   – or the government?
>
> A.   Yes...
>
> Q.   During the time you knew there was a serious employment tax problem, were you still writing checks for payroll accounts to individuals for their wages or to other vendors?
>
> A.   Yes.
>
> Q.   You were doing that for both CMS and INCON, is that correct?
>
> A.   Yes, that's correct.
>
> Q.   But yet you know the balances weren't paid in full?
>
> A.   Yes, I knew that.  Eventually I came to know that, yes.
>
> Q.   And you came to know it roughly six months after you started working there?
>
> A.   Approximately...
>
> Q.   And that occurred all the way through 1999?
>
> A.   Yes.

( Doc. 59, "Reynolds Dep." Exh. 36, 183:7-183:22, 193:4-193:9.)

Mrs. Reynolds admitted at her deposition that she made no efforts to use available funds to pay the IRS rather than to meet payroll or other needs.  Because of her duty to pay employee taxes over to IRS, Mrs. Reynolds is liable under 26 U.S.C. 6672.  During

**19**

the periods in question, Mrs. Reynolds failed to see that these and any other available funds were remitted to the IRS and not to other creditors. *See Schlicht v. United States*, No. 03-1606-PHX-RCB, 2005 WL 2083103 (D. Ariz. Aug. 25, 2005) ("Once a responsible person gains knowledge of a payroll tax deficiency, [he or she] is liable for all periods during which [he or she] was a responsible party."). Mrs. Reynolds' failure to pay over the payroll taxes was, as a matter of law, willful under Section 6672 during the tax periods at issue in this case.

After viewing the entirety of the evidence in Mrs. Reynold's favor, drawing all inferences in her favor, there is insufficient evidence to create a genuine issue of material fact concerning Mrs. Brenda Reynolds' liability under 26 U.S.C. § 6672. Summary judgment is GRANTED in favor of the United States.

IV.   <u>CONCLUSION</u>.

For the reasons discussed above:

1. Summary judgment is GRANTED in favor of the United States on its counterclaim against Gregory Shore under 26 U.S.C. § 6672.

2. Summary judgment is GRANTED in favor of the United States on its counterclaim against Brenda Reynolds under 26 U.S.C. § 6672.

The United States shall submit a form of final judgment consistent with this decision within five (5) days of electronic service.

IT IS SO ORDERED.

Dated:    October 9, 2009            /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE

**20**